YOUNGSTOWN TAXICAB CO. v. RYMER.

Ohio Appeals, 7th Dist., Mahoning Co.

Decided Oct. 28, 1927.

First Publication of This Opinion.

Syllabus by Editorial Staff.

**1235. VERDICTS.**
Verdict of $10,500 held not excessive, where injuries suffered in automobile accident were of serious and permanent nature.

**829. NEGLIGENCE.**
Where pedestrian, before leaving curb, looks in both directions, and believes and has right to believe, in exercise of ordinary care, that it is safe to cross street, he has right to proceed and it is not essential that he look again. Pedestrian has right to believe that driver will have his car under such control, at intersection, that he can stop within reasonable distance, and avoid injury.

Error to Common Pleas.

Judgment affirmed.

Leighninger & Church, Youngstown, for Taxicab Co.

Ruffalo & Wall, Youngstown, for Rymer.

STATEMENT OF FACTS.

This is an error proceeding prosecuted here to reverse a judgment of the Court of Common Pleas of this county. Upon the issues being joined in the court below, the cause came on to be heard to a jury and resulted in a verdict for $20,000. The trial court directed a remittitur of $9500, and, upon such remittitur being consented to, judgment was entered for $10,500, from which error is prosecuted here upon a number of grounds.

The facts of importance are as follows: On the evening of the 10th of October, 1925, at about 7:30 p. m., Charles Rymer was crossing Belmont Ave., in the City of Youngstown, at or near its intersection with Grant St., and, after having gone a few paces from the curb, he was struck by a taxicab driven by an employe of the Youngstown Taxicab Co. and was seriously injured. He was taken to a hospital, where he remained unconscious for some three or four days, and semi-conscious for some seven or eight days following. He was in the hospital for a number of weeks and was unable to return to his work until about nine weeks after the accident. It is claimed that he suffered a concussion at the base of the brain, together with injuries to the shoulder and left hip; that it resulted in the impairment of vision, buzzing in his ears and a loss of continuity of thought.

FARR, J.

"It is assigned for error here that the verdict and judgment are against the weight of the evidence, and contrary to law. This necessitates a consideration of the testimony disclosed by the record. Rymer says that on the evening in question he crossed at the intersection before mentioned; that he looked first to his right and then to his left; that he saw lights in the distance and, believing that he had time to cross the street, he started from the west curb towards the east and, after he had taken some three or four steps and when near the middle of the street, he was struck by this taxicab and thereby sustained serious injuries. Nellie Betsing was passing along the east side of Belmont Ave. on her way to St. Elizabeth's hospital. She says that she saw this taxicab coming down Belmont Ave. at a very rapid rate of speed. Russell H. Ricker, traveling also on the east side of the street, was drawing a small wagon in which he had some coal, and his little son was with him. He says he saw the approach of this taxicab running at a terrific rate of speed, at about 50 miles per hour. Upon the trial below, Morgan, the driver of the taxicab, was called. He denies that he was traveling at such a very rapid rate of speed, but finally admits that he did set the brakes. He also admitted that he skidded 150 feet to the next street below, Arlington St., and into that street. To use a common expression, he must have been "going some."

It is urged here that the judgment is contrary to law in that, by the testimony of Rymer himself, contributory negligence is shown. Upon cross examination he says that he does not know whether he looked after he left the curb or not; however, that would not be vital in this case. If he looked at the curb and believed and had a right to believe, in the exercise of ordinary care, that it was safe to cross the street, then he had a right to start across and it would not be essential to look again, if, in the exercise of reasonable care under the circumstances, he had a right to believe it was safe to cross the street. He also had a right to believe that the taxi driver would have his car under such control, at the intersection, that he could stop within a reasonable distance and avoid the injury.

It is next insisted that the verdict is excessive and the result of passion and prejudice. As an incident to the principal question, however, the record discloses, by the testimony of Dr. Heberding, an X-Ray specialist in good standing, that Rymer sustained a fracture at and into the base of the brain; that there were resulting injuries consequent upon this concussion of the brain. He thinks perhaps that Rymer may grow no worse in the years to come, but says that he will always be troubled, and Rymer says he is troubled with headaches, dizziness, physical exhaustion and some other ailments incident to concussion of the brain. Dr. Shaffer was called also. His testimony is even stronger.

This court, in the light of testimony of this character, by reputable physicians and corroborated by Rymer's own testimony as to what he suffered, cannot well say that the judgment should be disturbed upon the ground that it is excessive. While not a subject incident and proper for consideration here, quite few

there would be who would consent to take a chance with such an injury for the amount awarded."
(Pollock and Roberts, JJ., concur.)