## PHILLIPS v WEEDEN

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 9, 1934

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff in error.

R. Nevin, Youngstown, and David Haynes, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

The evidence introduced by the plaintiff, as testified to by two witnesses, W. W. Wirt and W. Mentzer, was to the effect that preceding the collision and while passing under the traffic light, the car was traveling at a speed of, as stated by one witness, thirty miles per hour, and the other from twenty-five to thirty miles per hour. The defendant says that he did not see the decedent until he suddenly appeared within six feet of the front end of his car; that he immediately applied the brakes but was

unable to stop. The preponderance of the evidence as to the speed of the car preceding the collision, as testified to by the witnesses and by the distance which the car traveled before it was finally stopped, indicates that the automobile was being operated at a speed of twenty-five to thirty miles per hour.

Upon the proposition as to whether there was negligence on the part of the defendant, attention is directed to a pertinent part of §6310-1 GC, which reads as follows:

"Whenever there is not sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons or substantial objects clearly visible within a distance of at least 200 feet, the forward lights which a motor vehicle, except commercial vehicles as hereinafter provided, is required to display, shall, when the motor vehicle is in motion, throw sufficient light ahead to show any persons, vehicles or substantial objects upon the roadway straight ahead of the motor vehicle for a distance of at least 200 feet, * * * and such light shall be sufficient to enable the operator of the motor vehicle to see a person, vehicle or substantial object upon the roadway, or at the side of the road, within ten feet of each side of the motor vehicle."

If the automobile in question was not lighted as thus required by statute, and such failure to so light prevented the defendant from seeing the decedent until he was within six feet of his car, and thus by his inability to see the accident resulted, the defendant was guilty of negligence.

The defendant testified, record page 64, as follows:

"Q. Do you mean to tell this court and jury that the rays of your automobile at this time did not distinguish all of the width of any highway when you were 100 feet from any given spot?

A. State that question again.

Q. Can you see objects 100 feet from you in the night on any spot on the road ahead of you?

A. Yes sir.

Q. Did you see Mr. Weeden that night 100 feet away from you?

A. No sir.

Q. You did not, did you?

A. No sir.

Q. The first time you saw him he was in the middle of the road?

A. About six feet in front of the car."
* * *

"Q. Well, you were traveling, of course, on your own side of the highway?

A. Yes sir.

Q. Well over?

A. No, about the middle of the car.

Q. You were traveling with—what was that last statement?

A. He was about the middle of the car.

Q. All right, where was your car on the highway with reference to either the left or the right side when you first saw Mr. Weeden in the middle of the road?

A. I was on the right side.
* * *

Q. Well, where did it happen then with reference to this far side of the road to the middle of the street, did it happen in the middle of the right hand side of your road?

A. Approximately the middle of the right hand side of the road.

Q. How wide is that road?

A. I took the measurement this morning.

Q. Yes?

A. From outside of curb to outside of curb, 24 feet."

It is apparent from the testimony of the defendant that he could have seen a substantial object over the entire width of the highway for a distance of 100 feet in advance of his car, but he did not see the decedent until the front end of his car was within six feet of him. The wife and daughter testify that their first knowledge that anything was happening at the time of the accident was the application of the brake, and that they did not see the decedent until after the collision, that they saw him hurtling past the westerly side of the car. It is further apparent that there was no reason why the defendant could not have seen the decedent within 100 feet of his car, and no reason is apparent why he should not have seen him, in the exercise of reasonable care. It was a straight road, with nothing to interfere with his line of vision in advance of his headlights. Clearly the defendant was guilty of negligence proximately causing the accident under the conditions indicated.

Upon the proposition as to whether there was contributory negligence on the part of the decedent such as would prevent a recovery in his behalf, it may be stated further that his home was a short distance southwest from the intersection of these two highways. He was seen to leave the post office on the easterly side of Route 7 and located easterly from the point of collision. No witness appeared in the case who saw him thereafter and previous to the

collision except the defendant, who saw him immediately in front of the automobile, as hereinbefore stated. It may be reasonably inferred from the evidence and such deductions as may be properly made therefrom, that the decedent had been to the post office and attempted to cross the street as he proceeded homeward. It is shown in the evidence that at the time of the accident there was no automobile in the vicinity or in sight upon the highway except that of the defendant. There were no cross walks in this little village and the decedent had a right to cross the street at the point in question, exercising reasonable care in so doing.

It may further be assumed that acting as an ordinarily prudent person, when he reached the curb or was about to step upon the pavement he looked to his left and right and saw no car approaching except that of the defendant from the north. If he was proceeding at the speed at which persons ordinarily walk, he presumably would travel at the rate of about four miles per hour, and it would take him about four seconds to reach the point of the accident. If the defendant was proceeding southerly at a rate of about 25 or 30 miles per hour, reaching the point of the collision at the same time as the decedent, the car would have traveled about 120 or 125 feet from the time the decedent started across until the accident happened. The question then becomes pertinent as to whether or not the decedent was guilty of contributory negligence in attempting to cross the street with the automobile coming toward him and at about the speed indicated. Some authorities will now be cited upon this proposition.

In the case of **The Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v Lee, Admr., 111 Oh St, 391,** the second paragraph of the syllabus reads:

"In an action involving the negligence of the defendant, and contributory negligence of the plaintiff, when, giving to each portion of the plaintiff's evidence the most favorable interpretation in favor of the absence of negligence on his part, such evidence under such interpretation is susceptible of no other reasonable inference than that of negligence on his part, directly contributing to his injury, the question of contributory negligence ceases to be a question of fact for the determination of the jury."

In the case of **McMurtrie v Wheeling Traction Co., 107 Oh St, 107,** the first paragraph of the syllabus reads as follows:

"Where any phase of the facts, as shown by the evidence upon the subject of contributory negligence, will warrant the inference that the plaintiff, at the time of the injury, was exercising due care, it can not be said that plaintiff was guilty of contributory negligence, as a matter of law."

In discussing this case the court said, on page 111:

"In arriving then at whether there was any phase of the evidence which would tend to prove the absence of negligence on the part of plaintiff, the court would be required to consider the evidence in its most favorable aspect toward the plaintiff, and in doing so consider the favorable evidence and disregard the unfavorable evidence. Measured by this rule there was evidence tending to prove that plaintiff signalled the car while it was one hundred and twenty-five feet away, when she was about to step upon the track; that the motorman knew she intended to become a passenger for the length of time it took her to travel half the distance between the store and the track, prior to her signal; and that he could have stopped the car in about fifty feet, because he testified he did stop it in about fifty feet after the car struck her and a witness testified he did not attempt to stop the car until it struck her."

Citing now the case of **Steubenville & Wheeling Traction Company v Brandon, Admr., 87 Oh St, 187,** the second paragraph of the syllabus reads:

"A street railway company operating cars on a public street in a much frequented part of a city has not the right to operate its cars at street crossings at a dangerous rate of speed, without warning of approach, thus throwing all the burden of care and watchfulness to avoid accidents upon drivers of smaller vehicles seeking to cross, but its duty is to maintain proper control of the car in order to be able to stop or check the same if necessary to avoid accident. The driver of a horse and wagon at such street crossing has equal rights with the company in the street and to use the crossing, the driver in crossing making due allowance for the fact that the car runs upon a fixed track, and, by reason of its greater weight, being less easy to check or stop than the smaller vehicle."

The third paragraph of the syllabus reads:

"Where the motorman of a street car being operated on a public street in a much

frequented part of a city, discovers, or by the exercise of ordinary care and watchfulness should discover, that the driver of a smaller vehicle is about to cross the track at a street crossing, in front of such car, it is the motorman's duty to use ordinary vigilance to stop or check the car in order to avoid a collision; and the fact that such driver may have omitted to look for the approach of the car will not, as a matter of law, defeat his right to recover for injury from a collision with such car if the motorman has not used such vigilance."

Referring now to the case of **Trentman v Cox, 118 Oh St, 247,** the syllabus reads, in part:
"1. In an action for personal injury alleged to have been caused by a pedestrian being struck by an automobile upon a public highway, when attempting to cross a viaduct at a point where the public usually crossed to board the traction cars, the question whether the plaintiff, seeing an automobile approaching from 65 to 80 feet away at an unlawful rate of speed, and misjudging its speed and crossing without again looking toward the automobile, was guilty of contributory negligence, was properly submitted to the jury.
2. The failure of a pedestrian to anticipate negligence on the part of the driver of the automobile does not defeat an action for the injury sustained."

Reading from page 251, in the opinion:
"Not only may one cross at a street in front of a moving vehicle without his negligence being conclusively established, but it is also held that he need not, as a matter of law, constantly watch the vehicle."

Citing a large number of authorities. On page 252 it is said:
"As a matter of fact, the law does not say how often the pedestrian must look, or precisely how far, or when, or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again."

On page 253 it is said:
"Knowing that the automobile could swerve out of its course, Cox had the right to assume that it would not continue in its path and deliberately run him down. It is negligence for a driver of an automobile, having ample space to pass a pedestrian on the highway, so to guide his vehicle as to strike the pedestrian in passing. * * * No issue was made in the record as to whether the speed of fifteen or of twenty-five miles an hour was the proper speed at the point where this accident occurred. However, in either case, Cox had the right to assume that the automobile was being operated at the lawful rate of speed, instead of thirty-five or forty miles per hour. His failure to anticipate negligence upon the part of the driver does not constitute negligence per se. It was peculiarly difficult for Cox, facing the machine, accurately to estimate its speed. Moreover, Cox was not required to make accurate mathematical calculations of the speed of the machine. * * * The pedestrian had the right to presume that the motorist would conform to the statute."

On page 258 it is said:
"Without citing at length from numerous decisions, we call attention merely to the case of Murphy v Phila. Rapid Transit Company, 285 Pa., 399, decided by the Supreme Court of Pennsylvania in 1926, which appears to us exactly in point with regard to these facts. In that case a pedestrian was killed by a street car in front of which he attempted to cross. He observed the car approaching sixty feet distant. It was urged that he was guilty of contributory negligence as a matter of law in attempting to cross in front of the oncoming car. The court, adverting to the fact that the rights of the pedestrian and the street railway company are mutual, held that the pedestrian had a right to assume that the motorman on the street car approaching the street intersection would use due caution in controlling the car. The court stated that the failure of the decedent to anticipate the negligence of the motorman did not defeat the action, and held that the question whether the deceased was careless in attempting to cross the street at the intersection, after observing the car approaching sixty feet distant, was properly submitted to the jury."

In Harker v Gruhl, 111 NE, page 457, it is said in the syllabus:
"A pedestrian and the operator of an automobile have each the right to pass and re-pass on city streets, but neither may so negligently exercise the right as to injure the other, and each must regulate his own use of the street by observing ordinary care to avoid being injured or inflicting injury on the other."
"A pedestrian lawfully using a street need not constantly look or listen to apprehend if automobiles are approaching, and his failure to do so is not such negligence as will prevent his recovery for injuries in a collision with an automobile."

In the case of **Youngstown Taxicab Company v Rymer, the Court of Appeals of the Seventh District, Mahoning County, reported in 6 Abs 395,** said:

"A pedestrian need not as a matter of law constantly watch for approaching vehicles. The law does not say how often the pedestrian must look, or precisely how far or when or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. In such a situation if he believes or has the right to believe in the exercise of ordinary care that it is safe to cross the street, then he has the right to start across and it is not essential to look again."

In Aiken v Metcalfe, 90 Vt., 196, it is said: "No pedestrian has a right to cross over a public thoroughfare without regard to approaching vehicles, nor has any vehicle driver a right to appropriate the public street without regard to its use by pedestrians. The test to be applied in this case, as in others, is: What would a person of ordinary prudence have done under the circumstances shown? Would reasonable minds differ in answering that question? Some are more cautious than others, and though some would hesitate to start without looking up and down the street and keeping a continuous lookout for approaching vehicles, others are content with a glance about and immediately proceed. We sometimes think the latter class are less likely to be injured than the former. At any rate the law does not lay down precisely what must be done to constitute due care or omit it to render a person negligent. This depends upon the facts of each particular case, and in this cause conditions were such as to carry the issues as to whether decedent was at fault in any respect to the jury."

In the case of **Gill v Rhemes,** decided by this court, the opinion in which may be found in **Mahoning Appeals 1926, Vol. 2, commencing at page 102,** the facts were quite similar to those in the instant case. A pedestrian had attempted to cross a street in the city of Youngstown and was injured by an automobile while so doing. In this case it was said:

"We apprehend that the plaintiff in this case was not guilty of any negligence in attempting to proceed across the street and in so doing until he had reached the first rail and then saw the automobile approaching in much closer proximity. It was then

a proposition for him to determine in an instant, where, by the authorities he had no opportunity to reflect and was not held to as high a degree of care, whether he would stand still and take the chance of the automobile changing its course, being headed in his direction, re-tract his steps and get into the path of where the automobile ought to go and presumably it would, or go still further across the street. In our opinion it was a question of fact to be determined by the jury if he chose what would ordinarily be the safer course."

Under the evidence in this case, considered in connection with the law applicable thereto, was the decedent guilty of contributory negligence? Presumably he acted as pedestrians ordinarily do and looked in either direction for the approach of automobiles upon the highway which he desired to cross. The evidence indicates that the automobile in question was about one hundred feet away at the time he started. Authorities have been cited which seem to establish the rule that it is not the duty or obligation of a pedestrian, having once looked and started in the exercise of ordinary care, to continue to look in either direction. He had the right to assume, possessing no knowledge to the contrary, that the driver of the approaching automobile would not be guilty of negligence, and if approaching in dangerous proximity would, as he could easily have done had he exercised ordinary care to discover the pedestrian, when he should have either reduced the speed of his car and so permit the decedent to pass in safety, or deviate from the course which he was then pursuing, to the left and pass behind him.

Some of the cases cited have dealt with a directed verdict. However, the rule therein recognized is applicable to the instant case, that where the evidence tends to indicate an absence of negligence on the part of the person injured, or where a reasonable inference may be drawn to that effect, that an issue of fact is presented which requires the submission of that issue to the consideration and determination of the jury. In this connection we are mindful of the recent decision of the Supreme Court modifying the so-called scintilla rule and that where reasonable minds would not differ a question of law is presented and not one of fact.

This case was submitted to the jury and was decided in favor of the decedent and to the effect that he was not guilty of contributory negligence. There was evidence

tending to so prove, further sustained by reasonable inference to the same effect, and this court is not able to say that the verdict was against the manifest weight of the evidence. No reversible error is found by the court upon the issues presented relating to negligence and contributory negligence.

The final question for consideration is whether or not the verdict was excessive, as claimed by the defendant. With the first verdict of $288.50 for the expenses of the decedent previous to his death, complaint has not been made. It is claimed that the verdict for the benefit of the beneficiaries was excessive. This was in the sum of $2711.50. The decedent was a man seventy-three or seventy-four years of age, evidently in good health and well preserved for a man of his age. He had for years previous to the accident and until about three months before his death been employed as a lineman for a telephone company, performing somewhat arduous duties. That service, however, had failed. It is not indicated that he had any other position or job in prospect. It may well be imagined that at the present time many able-bodied and young men are unable to obtain work. The possibilities of this man securing any permanent remunerative position are quite remote. He had several children who were adults, or substantially so, and left a widow whose age is not apparent from an examination of the record. We are of the opinion that this verdict was larger than it should have been, and if a remittitur be accepted by the plaintiff, reducing the amount of the larger verdict to $2,000, the judgment will be affirmed.

Judgment affirmed.

LYNCH and SMITH, JJ, concur in the judgment.