**KELLER, Plaintiff-Appellee, v. CITY RAILWAY CO., Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1983.   Decided December 18, 1948.

Clarence J. Stewart, John P. Naas, Dayton, for plaintiff-appellee.

Landis, Ferguson, Bieser & Greer, Dayton, for defendant-appellant.

**OPINION**

By HORNBECK, J.

The appeal is from a money judgment in favor of plaintiff for damages for personal injuries suffered by her.

Plaintiff's cause of action was predicated upon the alleged negligence of the operator of defendant's trolley bus in failing to yield the right of way to her as she walked from the south to the north in the west crosswalk at an intersection of Third and Jefferson Streets in the City of Dayton; in failing to sound a warning and failing to see the plaintiff in time to bring the bus to a stop before striking her.

Defendant's trolley coach, prior to the impact, had been headed north on Jefferson Street where it stopped to take on passengers. When it got the green light, following its regular route, it then turned left to move into and travel west on Third Street. There is some variation in the testimony whether or not the trolley bus stopped on Jefferson Street to let south bound traffic move through before completing its turn into Third Street and whether or not a horn was sounded as or after it made the stop preparatory to its turn. Likewise, there is difference in the evidence as to the places where and the time when, if at all, plaintiff looked to right or toward the oncoming trolley bus as she crossed the street. There is no dispute in the testimony to the effect that plaintiff had a green light in her favor from the time that she left the curb and at the time of the impact. The operator of the bus admits that he saw the plaintiff as she was moving across the intersection, states that he sounded the horn for her to stop and that he expected her to do so and that he did not stop his bus until the time when he realized that the plaintiff would not stop to let him pass as he expected her to do. The bus came to rest a very short distance after the impact. There is some variation in the testimony as to what part of the bus came into contact with the body of the plaintiff.

It is the theory of the defendant that, without looking, plaintiff moved across the intersection and walked into the left front side of the bus. The plaintiff contends that as the bus was turning it was not at a right angle with Jefferson Street and that the forepart thereof struck her. Although the trial judge submitted the question of the negligence of defendant to the jury, the principal issue upon the trial arose on the issue of the contributory negligence of the plaintiff.

At the conclusion of plaintiff's case in chief and at the end of the whole case, defendant moved for a directed verdict

which motions were overruled. Defendant tendered thirteen special charges which it requested to be given to the jury before argument. The trial judge gave seven and refused to give six of these charges. Defendant also requested, if a general verdict was rendered, that the jury be required to answer seven special interrogatories.

Appellant assigns as error the refusal of the trial judge to direct a verdict for the defendant, the refusal to give the six special instructions before argument and refusal to submit the seven special interrogatories to the jury, and also claims that the judgment is contrary to law and the weight of the evidence.

We hold that the court did not err in refusing to direct a verdict for defendant for the reasons assigned by the trial judge, that upon some of the testimony the jury could properly find that the defendant was negligent and that the plaintiff was not contributorily negligent. Defendant's driver admitted that he made no effort to stop his bus, relying entirely upon his signal causing the plaintiff to stop and let him pass, until he realized that she would not stop. Plaintiff testified that, although she did not see the oncoming bus nor hear any signal, she did look to the right and the left as she left the curb and also looked to the right as she crossed the street. It was her contention that to see the oncoming bus she would have been required to look back of her as it made its turn. The position of the bus as it was completing its turn did not compel the conclusion that plaintiff walked into it. Whether or not she exercised the care required of her in the situation presented at and prior to the time that she was injured was one of fact.

Special instructions designated as (a) in the assignments of error, is:

(a) "In determining whether the operator of the trolley coach and the plaintiff were or were not guilty of negligence you are entitled to consider that the trolley coach cannot be stopped so quickly as the plaintiff could stop walking."

This charge makes an assumption of fact which may not have been correct.

(b) "You are instructed that the law placed upon the plaintiff, Mrs. Keller, the duty at all times to exercise ordinary care for her safety, and this required her to exercise ordinary care in the use of her faculties of sight and hearing in looking and listening for trolley coaches as she crossed Third Street."

This charge was properly refused because it unduly specified the obligation of ordinary care by the plaintiff to require her to look for a particular type of oncoming traffic, namely, "trolley coaches." The same be said of special charge (c).

(d) "The court charges you that both the plaintiff, Mrs. Keller, and the driver of defendant's trolley coach had a right to use the streets at the intersection at Third and Jefferson Street. It was the duty of each of them to observe the traffic regulations and laws regarding traffic, and also the duty of each of them to exercise ordinary care for their own safety and to make use of their faculties of sight and hearing for their own protection."

The trial judge assigned as a reason for a refusal to give this charge that "it leaves out of the account the plaintiff's preferential right-of-way." We support this conclusion. **Juergens v. Bell Dist., Inc., 135 Oh St 335.**

(e) "I charge you that even though you find that the plaintiff, Mrs. Keller, looked to her right and to her rear as she crossed Third Street, yet in the event that you further find that the only conclusion that can be reasonably reached upon consideration of the whole evidence is that if Mrs. Keller had in fact looked to the east or her right and the rear at such time and place and in such manner as would make the looking effective, she must and would have seen the trolley coach in time to have avoided the injury, then in such event I say to you that the plaintiff, Mrs. Keller, cannot recover in this action and your verdict must be for the defendant."

The charge among other requirements makes it the specific obligation of the plaintiff to look to her rear to discern that defendant's bus was approaching her.

(f) "It was the duty of the plaintiff, Mrs. Keller, as she was crossing Third Street, to use ordinary care in the use of her faculties for seeing and hearing to ascertain whether there was a trolley coach approaching. If you find that she failed in the performance of that duty and that such failure directly contributed in even the slightest degree, to cause the accident and her injuries, she cannot recover in this action and your verdict must be for the defendant, The City Railway Company, regardless of what it did or failed to do."

The trial judge refused this request because he had given another charge substantially covering the same subject matter.

We support this view. The charge given was,

"You are instructed that it was the duty of the plaintiff, Mrs. Keller, in crossing Third Street to exercise ordinary care in the use of her faculties of sight and hearing in looking and listening for trolley coaches; and if, being in the full possession of both faculties, she failed to see or hear anything when a prudent person, exercising his eyes and ears with ordinary care would have discovered the trolley coach in close proximity, and she was thereby injured then in such event she cannot recover in this action and your verdict must be for the defendant, The City Railway Company."

The special interrogatories tendered were:

No. 1. "Could the plaintiff, Mrs. Keller, in the exercise of ordinary care for her own safety have seen or heard the trolley coach in time to stop and thus avoid the accident?

No. 2. "If your answer to special interrogatory No. 1 is 'Yes', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No', then answer this special interrogatory:

"What prevented the plaintiff in the exercise of ordinary care for her own safety from seeing the trolley coach in time to stop and thus avoid the accident?

No. 3. "If your answer to special interrogatory No. 1 is 'Yes', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No', then answer this special interrogatory.

"What prevented the plaintiff in the exercise of ordinary care for her own safety from hearing the trolley coach in time to stop and thus avoid the accident?

No. 4. "If your answer to special interrogatory No. 1 is 'Yes', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No', then answer this special interrogatory.

"Was there anything which prevented the plaintiff in the exercise of ordinary care from stopping while she was still clear of the path of the trolley coach and thus avoiding the accident."

No. 5. "If your answer to special interrogatory No. 1 is 'Yes', do not answer this special interrogatory.

"If your answer to Special interrogatory No. 1 is 'No' and your answer to Special Interrogatory No. 4 is 'No', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No' and your answer to special interrogatory No. 4 is 'Yes', then answer this special interrogatory.

"What prevented the plaintiff, Mrs. Keller, in the exercise of ordinary care from stopping while she was still clear of the path of the trolley coach and thus avoiding the accident?"

No. 6. "If your answer to special interrogatory No. 1 is 'Yes', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No', then answer this special interrogatory.

"Was there anything which prevented the plaintiff, Mrs. Keller, in the exercise of ordinary care from stepping away from the path of the trolley coach and thus avoiding the accident?

No. 7. "If your answer to special interrogatory No. 1 is 'Yes', then do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No', and your answer to special interrogatory No. 6 is 'No', do not answer this special interrogatory.

If your answer to special interrogatory No. 1 is 'No' and your answer to Special Interrogatory No. 6 is 'Yes'. then answer this special interrogatory.

"What prevented the plaintiff, Mrs. Keller, in the exercise of ordinary care from stepping away from the path of the trolley coach and thus avoiding the accident?"

The trial judge, in refusing to submit the interrogatories, held that "with the exception of No. 1, it could not be said that they were offered individually and not as a series and further that, as framed, they implied duty upon the plaintiff which the law does not impose upon her; that they are not confined to controlling questions of fact, but do include mixed questions of law and fact, which have on occasions been disapproved by courts; that they do not serve the purpose intended by §11420-17 GC, that of testing a general verdict; but that they are in the nature of a cross examination or inquisition of the jury, and would tend to confuse and mislead them." This statement of the trial judge is comprehensive and, in the main, at least, correct.

Special interrogatory No. 1 and the subject matter of the others requires consideration of the rights and obligations of the parties under the facts developed in the trial of this cause.

Several cases are cited by counsel for appellant to support its claim that the interrogatories were proper under the law as announced by our Supreme Court, particularly **Will v.**

McCoy, **135 Oh St 241,** and the case which it approved and followed, **Horwitz v. Eurove, 129 Oh St 8,** some cases from this court, **Frizell v. City Ry. Co., 19 Abs 97; Titus v. Stouffer, 35 Abs 145,** several steam railway cases, such as **B. & O. Ry. Co. v. Heck, 117 Oh St 147; D. T. & I. Rd. Co. v. Rohrs, 114 Oh St 493,** and also Weygandt's Ohio Charges, page 310, section 1105 c and page 311, section 1122.

It should be observed, at the outset, that all of these cited cases were decided and Weygandt's Charges was published before the recent amendment to the Uniform Traffic Act, effective September 6, 1941.

In the abstract, it can not be urged that in any situation involving negligence one can avoid the obligation of exercising ordinary care for his own safety and for the protection of others. However, it is not proper to present general provisions of law, which, in themselves may be sound, unless there is some specification which limits them to the issue immediately at hand and permits their application in the light of the rights and obligations of the parties. Under the provisions of §§6307-13, 6307-45 GC and the City Ordinance pleaded here, the plaintiff if she looked in both directions as she stepped into the intersection, §6307-47 GC, had a preferential right to pass over the crosswalk where she was struck. Under §6307-13 GC, inasmuch as she had the green light, she had a right to proceed across the crosswalk and the defendant was by the same section required to "yield the right of way" to her because she "was a pedestrian lawfully within the crosswalk" and likewise, by §6307-5 GC, the specific duty was enjoined upon the operator of the bus "to yield the right of way to" (the plaintiff) "a pedestrian lawfully crossing the roadway within any crosswalk." Like right was accorded to her and like duty enjoined upon the defendant by the terms of the City Ordinance. In this situation, if the right of way meant a positive preferential right in plaintiff's favor, then it was not proper to merely state the general proposition that she was required to exercise ordinary care for her own safety without specifically defining her obligation in the light of her preferential rights under the Code and the ordinance. If the rights of the plaintiff and the defendant bus were identical at the intersection where plaintiff was struck, then it was appropriate to enjoin identical obligations on them. This was the view taken by the trial court in **Morris v. Bloomgren, 127 Oh St 147,** and severely critized by Judge Jones in his opinion. At page 142, in discussing with approval a dissent in **George Ast Candy Co. v. Kling, 121 Oh St 362,** it is said:

"They stated (the minority) that the rule adopted by the majority relegates the driver approaching from the right 'to the same duties as would arise if no statute existed; it deprives him of the advantage of the statute giving him the uninterrupted right of way; it permits the plaintiff to violate the law with impunity, and places both drivers on an equal plane by requiring ordinary care where their paths converge; it emasculates the statute, and requires the defendant, in such a situation, to exercise ordinary care under the rules of the common law, although he may be driving on the main highway in a lawful manner.'"

So, here, if the plaintiff was under the same obligation at all times, namely, when the bus was stopped on Jefferson Street, taking on passengers, as it left this station when it began to make the turn and was about to enter Third Street and again stopped, as testified by the driver, and at the time when it could have been observed that the driver would not stop as he approached the intersection, then the special interrogatories should have been submitted to the jury. In our judgment the care enjoined upon the plaintiff in the last of three situations mentioned was different from that which she was required to observe in the first two. The distinction is marked both in Morris v. Bloomgren, supra, and in Juergens v. Bell Dist. Inc., supra. Had there been a general verdict for the plaintiff and the interrogatories submitted to the jury and answered favorably to the defendant, upon the whole record it could not be said that they were so inconsistent with the general verdict as to require a judgment for the defendant.

In our judgment, the plaintiff, upon her testimony, had a right of way as she moved over the crosswalk and this right of way protected her until such time as she knew, or in the exercise of ordinary care, should have known, that defendant's driver did not intend to stop the bus. It was then incumbent upon her to exercise ordinary care for her own safety.

Morris v. Bloomgren involved the interpretation of §§6310-28 and 6310-28a GC as then effective. Sec. 6310-28 GC defining right of way read:

"Right of way means the right of a **vehicle** to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path." (Emphasis ours.)

This language is identical with the definition of right of way as found in §6307-2 GC, except that this section now includes "street car, trackless trolley or pedestrian."

**Sec. 6310-28a GC** provided:

"Excepting where otherwise hereinafter provided, the operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle to the **vehicle** approaching from the right." (Emphasis ours.)

**Sec. 6307-14 GC**, after providing that pedestrians facing the green signal may proceed across the crosswalk, further provides:

"but such traffic" (including all vehicles moving through the intersection) "shall yield the right of way * * * to **pedestrians** lawfully within a crosswalk. * * *" (Emphasis ours.)

To the same effect is §6307-45 GC. Is there any reason to doubt that in view of the uniformity of the sections of the Code now controlling with those under consideration in Morris v. Bloomgren, that the pronouncement in this case is controlling here. The care which was enjoined upon the plaintiff to observe as she moved over the crosswalk is inferentially defined in the fifth syllabus of Morris v. Bloomgren:

"The driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. If, however, the former, just as he is appraching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation."

Paraphrasing the language of Judge Jones in this opinion, at page 153, it may be said the Legislature could not have used more exact and certain terms in according the pedestrian with the green light in her favor, the right to proceed uninterruptedly in the direction she was moving across the intersection so long as she proceeded in a lawful manner. It is improper to withhold from the pedestrian possessing the right of way the privilege of proceeding without interruption in the direction in which she was moving, and to confine her and the driver of the trolley bus as their paths converge at the

crosswalk, to the same care in approaching the intersection that was required before the statute was enacted, namely, that. degree of care exacted under the common law. In defining the care enjoined upon the plaintiff it was necessary that it be announced in cònjunction with the rights acquired to her by the applicable statutes, **Juergens v. Bell, Inc., 135 Oh St 336,.** 2d syllabus.

The cases cited by appellant which undertook to make· differentiation between the absolute right of way of a pedestrian moving over a crosswalk and the right of way accorded an automobilist by the authority of Morris v. Bloomgren must be read with an appreciation that when they were written· §6307-13 GC and cognate sections were not effective and. controlling. **Surber v. Peoples Ry. Co., 11 Abs 61,** wherein we· affirmed a judgment entered on answer to special interrogatories, involved, in so far as we can learn from the opinion, a situation where the parties were under like common law· obligation to observe ordinary care. The case was decided in 1931. The same is true of **Riley v. City Ry. Co., 16 Abs 292.**

It is our judgment that the Court committed no reversible· error in refusing to submit the special interrogatories to the jury. We do not find that the judgment is contrary to law· nor against the manifest weight of the evidence. It will be: affirmed.

WISEMAN, PJ, and MILLER, J, concur.