LUCHANSKY, Plaintiff-Appellee, v. J. V. PARISH, INC.,
Defendant-Appellant.

Ohio Appeals, Seventh District, Mahoning County.

No. 3927.   Decided October 25, 1957.

2

Michael W. Kossach, Youngstown, for plaintiff-appellee.
Harrington, Huxley & Smith, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.

Crossing from the northerly to the southerly side of Indianola Avenue at the cross walk on the westerly side of Market Street in Youngstown, at ten thirty on a snowy December morning in 1954, plaintiff was struck by defendant's truck operated by its agent from a southerly direction on Market Street to and in a westerly direction on Indianola Avenue, and injured resulting in an action for damages in the court of common pleas.

The jury returned a verdict for the plaintiff for $25,000.00. The trial judge overruled defendant's motions for judgment non obstante veredicto and for a new trial, and entered judgment on the verdict. From that judgment defendant appealed to this court on questions of law.

On cross-examination in her case in chief plaintiff testified that before leaving the sidewalk of Indianola Avenue and entering upon the vehicular travelled portion thereof she "looked at the light" which automatically controls traffic at the intersection of Market Street and Indianola Avenue "and saw the light change" in her favor, but "previously to that, before I had stepped off the curb, I looked both ways," "stepped down from the curb on Indianola Avenue and looking straight ahead started to cross the street—took about three or four steps when she was struck by the truck, it was right on top of me."

Defendant contends that plaintiff's act "in stepping into or upon Indianola Avenue after she had noticed that the light had changed, without looking in both directions to see what was approaching" brands plaintiff as negligent as a matter of law, which negligence without question was a proximate cause of the accident, and entitles defendant to a directed verdict at the close of plaintiff's case or at the close of all the evidence introduced in the trial court.

Defendant testified that he saw plaintiff at no time crossing Indianola Avenue from the north to the south side thereof; paid no attention to a "thump" when he struck plaintiff, and brought his truck to a stop a distance of two hundred feet from the place he struck her.

Defendant waived its right to rely on the claimed error that the trial judge erred to its prejudice in overruling its motion for a verdict to be directed in its favor when it accepted the ruling of the court and proceeded with its defense and introduced evidence in its own behalf. **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

In our opinion the evidence properly admitted at the close of all the evidence clearly presented questions for the determination of the jury depriving defendant of the right to have a verdict directed in its favor at the close of all the evidence.

In **Keller v. City Railway Co., 53 Abs 417,** the second and third paragraphs of the syllabus state:—

"Under §6307-13 GC, a pedestrian having the green light in his favor, has the right to proceed across an intersection within the crosswalk and the operator of a bus, turning left and into such crosswalk, has the duty to yield the right of way to such pedestrian.

"The preferential right of way afforded a pedestrian under §6307-13 GC, protects him in proceeding across an intersection within a crosswalk until such time as he knows, or in the exercise of ordinary care should know, that the driver of a vehicle approaching the crosswalk does not intend to stop."

In **Hurt v. Charles J. Rogers Transportation Co., 164 Oh St 329,** the fourth paragraph of the syllabus reads:—

"The weight of an inference as well as the weight of the explanation offered to meet the inference is for the determination of the trier of the facts, unless the explanation is such that reasonable minds could not reach different conclusions as to its preponderating value when measured against the weight of the circumstantial evidence."

In Columbus Pipe & Equipment Company v. Ackerson, 135 N. E. (2nd) 75, the second paragraph of the syllabus reads:—

"If upon any essential issue reasonable minds might differ, motion to dismiss at close of plaintiff's case should be overruled."

In **Titus v. Stouffer, 35 Abs 145,** the eleventh paragraph of the syllabus reads:—

"Where pedestrian's uncontradicted evidence showed that he looked in both directions before starting across the intersection, thus complying with the statutory law, a failure to again look as he proceeds across cannot be determined negligence as a matter of law, but raises a factual question for the determination of the jury."

**4**

In **Phillips v. Weeden, 18 Abs 229**, in the third paragraph of the syllabus it is said:—

"A pedestrian about to cross the street, who has in the exercise of ordinary care looked once in both directions for approaching traffic, has no duty or obligation to continue to look in either direction."

Certainly reasonable minds might differ on the question of plaintiff's contributory negligence.

The trial judge charged the jury in writing before argument, erroneously defendant claims, the following propositions of law submitted by plaintiff separately and not as a series:—

"3. Ladies and gentlemen of the jury, I charge you that the violation of a state statute passed for the protection of the public, is negligence per se, and where such act of negligence by a defendant is the direct and proximate cause of an injury, not directly contributed to by the injured person, the defendant is liable."

"4. Ladies and gentlemen of the jury, the court charges you that the term 'pain' means a disturbed sensation causing suffering or distress."

"5. Ladies and gentlemen of the jury, I charge you that, if under the law and the evidence, you find the plaintiff is entitled to recover, your verdict should be in such amount as will fairly and fully compensate her for the injuries which she has actually sustained directly resulting from such collision, but in any event your verdict cannot exceed the amount claimed, which is $50,000.00. This compensation would include the pain and suffering which she has already endured, as well as the pain and suffering which she is reasonably certain to endure, if any, in the future. You will consider the nature, extent, character and permanency of the injuries and any and all the circumstances shown in the evidence bearing upon this question in determining the amount of damages which she is entitled to receive."

Negligence per se exists only where there has been a violation of a specific requirement of the act. However, in determining the prejudicial character of request number two we must look to the charge as a whole, including the general charge. The evidence in this case shows the violation of the statute providing for the sounding of a warning. Further, it is conceded that defendant was negligent when plaintiff was struck. While perhaps erroneous it is not so prejudicial to defendant as to warrant a reversal of the judgment in this case.

The charge numbered three is bad, so defendant claims, because it deals in generalities, "is not pertinent to the issues and facts, is misleading and confusing," and states that "a state statute passed for the protection of the public is negligence per se."

Admittedly defendant's driver did not sound a warning of his approach.

In the case of **Eisenhuth v. Moneyhon, 161 Oh St 367**, the second paragraph of the syllabus reads:—

"Where a legislative enactment imposes upon any person a specific duty for the protection of others, and his neglect to perform that duty proximately results in injury to such another, he is negligent per se or as a matter of law."

At page 377, the court stated:—

"If a pedestrian were here 'affected,' * * * clearly a failure of the defendant to give any signal by sounding the horn would be a violation of a definite requirement of the statute and would be negligence per se."

Defendant claims charge number four is objectionable because it defines pain, which is a commonly understood word requiring no definition.

The definition of the word "pain" as submitted by the plaintiff and charged by the trial judge is that contained in Blakiston's New Gould Medical Dictionary, which word the author thereof thought was sufficiently uncommon to define in his highly rated work. The authority of a court to grant such request to charge is found in 39 **O. Jur., Section 294, Page 916,** under the topic "defining words and terms."

In our opinion the trial judge committed no error prejudicial to the defendant in charging the jury as requested by plaintiff in request to charge before argument numbered four.

Charge number five is objectionable, defendant contends, because of reference to the fact that the verdict of the jury could not exceed $50,000.00. and because it authorized the jury to award compensation for "future pain and suffering" when future pain and suffering was not indicated by the evidence.

In the eighth paragraph of the syllabus in the case of **Misrach v. Epperson, 32 Oh Ap 451,** it is said:—

"In action for injuries sustained when struck by automobile while crossing street at place other than regular crossing, instruction on measure of damages stating that measure of damages is compensation 'within amount claimed' held not improper, since words 'within amount claimed' merely indicated that no larger amount than claimed in petition could be awarded."

See also Volume 1, Section 38.22, Page 375 Ohio Instructions to Juries by Lehr Fess.

There is much evidence in the bill of exceptions bearing on the issue of pain and suffering.

It is settled law that special charges and the general charge should be construed together. See **Varner v. Eppley, Admr., 11 Abs 594,** affirmed in **125 Oh St 526.**

In 2 **O. Jur., Part 2, Section 755, Pages 1425** and **1426,** it is said:—

"* * * If the charge considered as a whole appears to be fair and proper and to state the law of the case correctly and in a way reasonably calculated to enable the jury to understand the rules of law which they are to apply to the evidence before them, the judgment will not be reversed because the language of some part of the charge may, if taken alone, be objectionable, or subject to criticism, or because some clause, sentence, or paragraph standing by itself is erroneous, inaccurate, obscure, ambiguous, or misleading or confusing. * * *."

Defendant contends that the trial judge erred to its prejudice in permitting plaintiff's medical witness to answer a hypothetical question because it was predicated upon assumptions which either were not established or were absolutely false such as that plaintiff "was un-

**6**

conscious for some little time," and not based on fact, for example "from the time of the accident until she was discharged by her family doctor, which was July 11, 1955, her pressure was elevated"; and because in the charge the trial judge "omitted to instruct the jury that it was incumbent on plaintiff to establish the premise included in the hypothetical question by a preponderance of the evidence"; and finally, because "under all of the facts the verdict was excessive and appears to be given under the influence of passion and prejudice, which is assigned as a separate ground of error but which will be disposed of under the claimed error of submission of the hypothetical question, which question reads:—

"Q. Now, doctor, I want to ask you this hypothetical question, and the facts that I am going to propound to you I want you to assume to be true. Assume, doctor, that on the 10th day of December, 1954, Mrs. Luchansky at that time was 36 years of age, married, mother of three children; that on that date while in the process of crossing Indianola Avenue in the City of Youngstown, crossing the intersection of Indianola Avenue at Market Street, while in the process of so doing she was struck by a truck, thrown to the pavement of the street. Assume further, doctor, that she was unconscious for some little time, and that the next thing she remembered was some person or persons attempting to revive her; that she was then taken to the South Side Hospital where she was confined for a period of four days. Assume further, doctor, that she had laceration of her forehead, laceration of her lip, laceration of her chin, laceration of her left wrist, and multiple bruises and contusions over various parts of her body. Assume further, doctor, that upon her discharge from the hospital the wound of her left wrist became infected which required incision and drainage. Assume further, doctor, that in that interim, from the time of the accident until she was discharged by her family doctor which was July 11, 1955, her pressure was elevated, that she suffered dizziness, headaches, discomfort, nervousness and blurring of vision.

"Assuming those facts to be true, doctor, in your opinion based upon reasonable medical certainty, would you say that there is a causal connection between the set of facts which I have stated and the diagnosis which you made of her on June 1, 1956?"

The evidence introduced by defendant's counsel on cross-examination satisfies us that the fact of plaintiff's unconsciousness and high blood pressure is established conclusively laying a foundation for the hypothetical question in controversy.

When the trial judge inquired of counsel whether they wished to suggest additions to the charge counsel for defendant said "We have nothing further, your honor."

In 2 O. Jur., Part Two, Section 746, Page 1396, it is said:—

"* * * the rule has not been modified that counsel cannot complain of errors of omission where they sit by and fail to make request for a more specific charge * * *."

In 21 O. Jur. (2nd) Section 429, Page 438, it is said:—

"Apart from an hypothesis based upon facts within the witness's

own personal knowledge, a hypothetical question must be based upon facts assumed to have been proved in the case on trial—facts which the evidence may warrant the jury in finding to exist."

Section 428, Page 438, states:—

"* * * And the fact that hypothetical or other facts on which the expert premises his professional opinion are meager and weak may affect the weight, but not the competency of the testimony."

Section 430, Page 442, states:—

"Counsel on each side, in propounding hypothetical questions, are entitled to include therein such facts as they claim are shown by the evidence, though the evidential facts are in dispute, and it cannot be known where the jury will find the preponderance to be. * * *."

Plaintiff, aged thirty-six years, was struck on the back of her head resulting in a concussion of the brain, and suffered temporary unconsciousness, blurred vision, dizziness, easy fatigue, and psychoneurosis; had a line fracture of the nasal bones, causing irregularity and blocking her nasal passages, necessitating future surgical interference; lacerations about her face and forehead requiring twenty-one sutures to close, permanently scaring and disfiguring her; chest, rib, left wrist, arm and forearm injuries, and multiple bruises of her body and lower extremities, and persistent high blood pressure, general impairment of her health, lowered vitality, and complete incapacity for four months.

Counsel for plaintiff cites an article by Dr. Max T. Schnitker entitled "Trauma to the skull, brain and spinal cord" as indicating the present thinking of medical men on head injuries. It is stated in that article which appears in the December 17, 1956 issue of the **Ohio Bar** at page 1001, as follows:—

"* * * The foregoing rules of thumb are not applied simply when one is encountered by a patient who had an apparently trivial head injury and continues to complain of headaches, dizziness, irritability and easy fatigue. This is called the post traumatic cerebral contusion syndrome and is seen more commonly following the less severe head injuries than usually the more severe ones. * * *."

In another article by Dr. Jack M. Schechter entitled "Traumatic Neuroses," reported in the March 25, 1951, issue of the Ohio Bar, the author gives a case history of:—

"A young woman while walking on street at night was suddenly attacked by an unidentified male. She ran into a building entrance, but could not enter the building itself; she spent some thirty minutes until found by the night watchman. Shortly thereafter, she appeared dazed and distant. Subsequently, she developed spells of crying that lasted a few days, slept poorly, had recurrent dreams of being chased and was unable to move for several months thereafter. She seemed sensitive to loud noises and sudden movement around her. For several months she avoided large groups and feared being alone."

In his work "Injuries of Skull, Brain and Spinal Cord" Dr. Samuel Brock, Professor of Neurology, New York University, College of Medicine, the author discuses neuroses resulting from head injuries and the seriousness thereof, and deals with cases almost identical with the one we review.

While not necessarily bound by these authorities in this case we cite them as indicating the advance in medical thinking with reference to even minor head injuries and nervous shock.

In Smith v. Pittsburgh & W. Ry. Co., 90 Federal Reporter 783 it is said:—

"A verdict should not be set aside simply because it is excessive in the mind of the court, but only when the excess is shocking to a sound judgment and a sense of fairness to the defendant. Where there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury, rather than the contrary."

In a dissenting opinion written in Haley v. Ohio, United States Reports Volume 332, page 596 at page 624, it is said:—

"Until a better way is found for testing credibility than by the examination of witnesses in open court, we must give trial courts and juries that wide discretion in this field to which a living record, as distinguished from a printed record, logically entitles them. In this living record there are many guideposts to the truth which are not in the printed record. Without seeing them ourselves we will do well to give heed to those who have seen them."

In **Dietsch v. Burnside Motor Freight Lines, Inc., 53 Abs 321 at page 328**, it is said:—

"* * * The measurement of this damage is, within all reasonable limitations, in the light of present economic conditions, within the discretion of the jury."

In the case of **Telling Belle Vernon Co. v. Krenz, 34 Oh Ap 499 at page 502** it is said:—

"* * * If there is credible evidence, that is all that is necessary, and a reviewing court may not disturb the verdict in the face of that fact."

In **2 O. Jur., Section 635, page 1153**, it is said:—

"No reversal can be had on the ground that the judgment is against the weight of the evidence except as a matter of law. It follows that a judgment will not be reversed on this ground merely because the evidence sustaining it seems open to suspicion or does not impress the reviewing court; nor because the reviewing court entertains some doubt as to whether such judgment is in fact supported by the weight of the evidence, is not in full accord with the verdict or finding of fact on which it was rendered, is not satisfied that such verdict is right, or thinks that another jury might arrive at a different conclusion or that a contrary verdict might well have been rendered or that the trial judge might well have set the verdict aside; nor because it has views of its own contrary to those expressed by the jury or the court below, or differs in its opinion as to the facts or as to the inferences to be drawn from the facts proved, or would have rendered a different verdict or decided differently if it had heard the case in the first instance."

See also **Tod v. Wick Bros. & Co., 36 Oh St 370; Industrial Commission v. Mounjoy, 36 Oh Ap 476; and Riegel v. Belt, 119 Oh St 369.**

The trial judge did not err to defendant's prejudice in overruling its motion for judgment non obstante veredicto.

In 2 O. Jur., Part 2, Section 833, page 1583, it is said:—

"Even though there may be no such conflict in the testimony as makes it necessary for the jury to determine disputes or questions of veracity, if the circumstances disclosed by the evidence are such that it can be said that different minds might reasonably arrive at different conclusions as to the inferences to be drawn therefrom and as to the ultimate facts established thereby, the case is still one for the jury and it is proper and not ground for reversal to overrule a motion for a directed verdict and constitutes reversible and prejudicial error to grant it."

The judgment of the court of common pleas is affirmed.

NICHOLS, PJ, GRIFFITH, J, concur.